# Exhibit 1



# Notice of Service of Process

**LYN / ALL**
**Transmittal Number: 28281552**
**Date Processed: 01/05/2024**

| | |
|---|---|
| **Primary Contact:** | Sandra Adams<br>United Services Automobile Association<br>9800 Fredericksburg Rd<br>San Antonio, TX 78288-0002 |
| **Electronic copy provided to:** | Ruby Esquivel<br>Griselda Mejia<br>Danielle Lopez<br>Carmen Solis |

| | |
|---|---|
| **Entity:** | USAA Casualty Insurance Company<br>Entity ID Number  3692525 |
| **Entity Served:** | USAA Casualty Insurance Company |
| **Title of Action:** | Gerard R. Redublado and Kimberly A. Jones Redublado, Trustees, The Redublado Family Trust Dated: 11/23/05 vs. USAA Casualty Insurance Company |
| **Matter Name/ID:** | Gerard R. Redublado and Kimberly A. Jones Redublado, Trustees, The Redublado Family Trust Dated: 11/23/05 vs. USAA Casualty Insurance Company (15069057) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Boulder County District Court, CO |
| **Case/Reference No:** | 2023CV31146 |
| **Jurisdiction Served:** | Colorado |
| **Date Served on CSC:** | 01/05/2024 |
| **Answer or Appearance Due:** | 21 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Merlin Law Group, P.A.<br>720-665-9680 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

DATE FILED: December 29, 2023 9:33 AM
FILING ID: E7723584B7F59
CASE NUMBER: 2023CV31146

| | |
|---|---|
| DISTRICT COURT OF THE 20TH JUDICIAL DISTRICT, BOULDER COUNTY, STATE OF COLORADO<br>Address of Court:     1777 6th St.,<br>                        Boulder, CO 80302<br>Phone Number:      (303) 441-3750 | |
| **GERARD R. REDUBLADO AND KIMBERLY A. JONES REDUBLADO, TRUSTEES, THE REDUBLADO FAMILY TRUST DATED: 11/23/05**<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**USAA CASUALTY INSURANCE COMPANY,**<br><br>**DEFENDANT.** | **▲ FOR COURT USE ONLY ▲** |
| ATTORNEYS FOR PLAINTIFF:<br>Nicholas Conklin, #57543<br>Jonathan E. Bukowski, #45614<br>Matthew E. Stalcup, #59417<br>Merlin Law Group, PA<br>1001 17th Street, Ste. 1150<br>Denver, CO 80202<br>Telephone: 720-665-9680<br>E-Mail: nconklin@merlinlawgroup.com<br>E-Mail: jbukowski@merlinlawgroup.com<br>E-Mail: mstalcup@merlinlawgroup.com | Case Number:<br>Div.:          Ctrm: |
| **COMPLAINT AND JURY DEMAND** | |

**COMES NOW** Plaintiff, Gerard R. Redublado and Kimberly A. Jones Redublado, Trustees, The Redublado Family Trust Dated: 11/23/05, by and through their undersigned counsel, and hereby submit this Complaint and Jury Demand against Defendant, USAA Casualty Insurance Company, and state as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff, Gerard R. Redublado and Kimberly A. Jones Redublado, Trustees, The Redublado Family Trust Dated: 11/23/05 ("Plaintiff") is a trust created by and pursuant to the laws of the State of Colorado.

2.      Plaintiff, Gerard R. Redublado and Kimberly A. Jones Redublado, Trustees, The Redublado Family Trust Dated: 11/23/05, has 5 beneficiaries, all domiciled in Colorado.

3.      Defendant, USAA Casualty Insurance Company ("USAA"), is a foreign insurance company incorporated in the State of Texas and authorized to do business in the State of Colorado.

4.      This Court has subject matter and personal jurisdiction over the parties to this cause of action.

5.      A cause of action exists under Colorado state law for claims regarding the conduct complained of herein.

6.      Jurisdiction is proper as to USAA pursuant to Colorado Revised Statutes § 13-1-124(1)(a), (b), and (d) because USAA conducted the business at issue in this action, committed tortious misconduct and contracted to insure property within Boulder County, Colorado.

7.      Venue is proper pursuant to Col.R.Civ.P. 98 because the events which constitute the basis of this Complaint and Jury Demand, including, but not limited to, the formation of the insurance policy and location of the home in question, occurred in Boulder County, Colorado.

## FACTS COMMON TO ALL COUNTS

8.      At all times material hereto, Plaintiff was the owner of the real property and residence located at 823 Trail Ridge Drive, Louisville, Colorado 80027 (the "Home").

9.      Plaintiff purchased a replacement cost value, Colorado Homeowners Policy of insurance from USAA under Policy Number 00874 25 80 91A (the "Policy").

10.    The Policy included the following applicable coverages:

    a.  Coverage A – Dwelling:       $566,000.00
    b.  Other Structures:             $56,600.00
    c.  Increased Dwelling:         $141,500.00
    d.  Debris Removal:              $28,300.00
    e.  Building Ordinance:         $56,600.00
    f.  Personal Property:          $283,000.00
    g.  Trees, Shrubs and Other Plants:  $28,300.00
    h.  Tree Removal:                $1,000.00
    i.  Loss of Use:               Uncapped up to 12 Months

11.    The Policy's insuring agreement provides coverage for sudden and accidental direct physical loss to the Home, including physical loss caused by fire, smoke, ash, and other fire related contaminants.

12.    The Policy provides coverage for additional living expenses incurred to maintain a normal standard of living.

13.    Pursuant to its Policy, USAA agreed to repair, rebuild, and replace damaged building materials with materials of like kind and quality.

14.    The Policy provides for replacement cost value benefits at the time in which repairs are to be made, not as of the date of loss. This coverage includes and contemplates any increase in cost that may arise based on a change in market conditions such as access to materials and labor.

15.    On December 30, 2021, during the Policy period, the Marshall Fire swept through Superior, Louisville, Broomfield, and unincorporated parts of Boulder County, becoming Colorado's most destructive fire in terms of structures lost.

16.    The President of the United States issued a Major Disaster Declaration for the Marshall Fire.

17.    The Boulder County Office of Emergency Management warned:

All ash contains small amounts of cancer-causing chemicals. Ash and debris from burned structures may contain toxic substances because of synthetic and other materials present in buildings. Older buildings may contain asbestos and lead. Ash consists of ultra-fine particles that can go deep into the lungs where they can enter the bloodstream and damage internal organs. Even highly efficient respiratory protection such as N95 masks can allow small amounts of ash to reach your lungs.

18.    The University of Colorado Boulder Cooperative Institute for Research in Environmental Sciences warned:

Health risks in fire-damaged areas include particles, asbestos, lead, and chemical residues. Fires emit a lot of particles (also known as Particulate Matter, PM) and gasses. Smaller sizes of PM penetrate deep into the lungs and are harmful to human health. Some of the gases emitted and created in fire plumes are Volatile Organic Compounds (VOCs). These compounds create the smell of a fire plume (and linger post-fire). Many of the gases emitted by active fires are also harmful to human health.

19.    On December 30, 2021, the Marshall Fire caused sudden and accidental direct physical loss to the Home, including physical loss caused by smoke, ash, and other fire related contaminants rendering Plaintiff's Home uninhabitable (the "Loss").

20.    Upon returning to their Home, Plaintiff detected a strong smoke and chemical odor inside which did not exist before the Marshall Fire.

21.    Upon returning to their Home, Plaintiff observed piles of ash and soot inside their Home and garage which did not exist before the Marshall Fire.

22.    Plaintiff promptly reported the Loss to USAA and were assigned Claim Number 008742580-025 (the "Claim").

23.    On January 3, 2022, the Colorado Division of Insurance issued Bulletin No. B-5.43, concerning Marshall Fire claims handling, which provided in part:

Warping and structural integrity concerns due to extreme heat and/or particulate infiltration and contamination must be addressed.

When handling the smoke, soot, ash, or water damage claims, the Division directs insurers to consider the related long-lasting effects on electronics, furniture and other property when estimating the total damage. Merely cleaning the walls and property will not necessarily return the property to pre-loss condition. Companies must consider their policyholders' concerns about faulty wiring, inoperable electronics, and soft material contamination. Health related issues, including respiratory difficulties, directly caused by exposure to smoke, soot, ash, or mold are damage and loss, and insurers shall consider reasonable substantiation to make appropriate coverage decisions.

24.    USAA assigned a Property Field Adjuster, Andrew Meyer, to investigate and handle the Claim on behalf of USAA.

25.    Upon reasonable information and belief, Andrew Meyer is not IICRC certified (Institute of Inspection Cleaning and Restoration Certification) for Fire & Smoke Restoration.

26.    On January 1st, 2nd, and 12th, 2022, Plaintiff submitted to USAA, numerous photographs illustrating damage to the Home. The photographs depicted damage to the interior and exterior of the Home caused by the Marshall Fire.

27.    On January 11, 2022, Plaintiff requested a full copy of the Policy which was released to Plaintiff after eight (8) months.

28.    USAA's failure to provide a complete copy of the Policy within three (3) business days of the request was in violation of Colorado Division of Insurance Bulletin No. B-5.44.

29.    Insurance industry standards for the investigation of wildfire damage requires the usage of an industrial hygienist to evaluate the subject property for soot, char, or ash particulate matter and to develop a detailed protocol for the restoration and cleaning of such combustion by-products.

30.    On January 12, 2022, Plaintiff requested USAA approve the services of an industrial hygienist to evaluate the Home for soot, char, or ash particulate matter.

31.    On January 21 and February 7, 2022, Andrew Meyer performed inspections of the Home.

32.    USAA did not utilize the services of an industrial hygienist during its inspections of the Home in January and February 2022, instead Andrew Meyer's inspection was limited to visual observations.

33.    On January 27, 2022, Plaintiff requested USAA provide coverage for damaged fencing and approve the services of a structural engineer to evaluate the Home.

34.    Meyer replied that there should be no talk of structural engineers because a structural engineer was unnecessary and "don't go opening that can of worms." Myer instructed Plaintiff to not consider or discuss the retention of a structural engineer.

35.    On February 7, 2022, during an onsite walkthrough, Meyer notified Plaintiff that "we will have to come to a number" on contents rather than going line-by-line-item.

36.    During the February 7, 2022 walkthrough, Plaintiff asked Meyer what would happen if fire debris was found in the walls when windows were replaced. Meyer replied, "We will fight you on that." Meyer indicated that any soot discovered in the walls would be considered a preexisting condition – and due to bad Tyvek wrapping.

37.    On February 14, 2022, Plaintiff submitted a roofing and siding estimate from contractor 5430 Design Build.

38.    On February 16, 2022, Plaintiff submitted an estimate from 5430 Design Build for the remediation and insulation replacement of the Home's attic.

39.    On March 1, 2022, Plaintiff provided USAA with an estimate form Champion Window Company (Champion) for $106,442.00 to account for the Home's fire-damaged sunroom.

40.     On March 8, 2022, Plaintiff provided USAA with a second roof repair estimate from GreenPoint Roofing.

41.     On March 3, 2022, USAA completed its initial estimate under coverages for the dwelling, other structures, and trees and shrubs totaling $166,956.43 Replacement Cost Value (RCV) and $158,352.16 Actual Cash Value (ACV) ("First USAA Estimate").

42.     On March 3, 2022, USAA issued payment under Dwelling, Other Structures, Personal Property, and Trees, Shrubs, and other Plants in the amount of $155,462.13.

43.     The First USAA Estimate grossly understated the scope and cost to return the Home back to its pre-Loss condition.

44.     More specifically, the First USAA Estimate was largely limited to cleaning the surfaces of the Home and did not include any allowance for repairs required by local ordinance and law.

45.     First USAA Estimate did not make sufficient allowance to restore the fire-damaged windows and doors in Plaintiff's home to pre-loss condition.

46.     First USAA Estimate did not make sufficient allowance to restore Plaintiff's fire-affected insulation, plumbing, HVAC, or electrical systems to pre-loss condition.

47.     First USAA Estimate did not make sufficient allowance Plaintiff's fire-damaged sunroom to pre-loss condition.

48.     First USAA Estimate did not cover restoring the Home's gas fireplace to pre-loss condition.

49.     On or around March 17, 2022, the Colorado Division of Insurance published a Consumer Advisory confirming USAA's agreement to offer independent testing at the insurer's cost where there is a question of habitability after cleaning of a home.

50.     On March 23, 2022, USAA completed an updated estimate on the dwelling, other structures, and trees and shrubs totaling $189,742.34 RCV, and $166,263.92 ACV. ("Second USAA Estimate").

51.     The Second USAA Estimate continued to grossly understate the scope and cost to repair/clean the main residence to its pre-loss condition.

52.     More specifically, the Second USAA Estimate was largely limited to cleaning the surfaces of the Home and did not include any allowance for repairs required by local ordinance and law.

53.     The Second USAA Estimate did not make sufficient allowance to restore the windows and doors in Plaintiff's home to pre-loss condition.

54.     The Second USAA Estimate did not make sufficient allowance to restore Plaintiff's insulation, plumbing, HVAC or electrical systems to pre-loss condition.

55.     The Second USAA Estimate did not make sufficient allowance Plaintiff's sunroom to pre-loss condition.

56.     On March 27, 2022, Meyer emailed Plaintiff insinuating that he would only be willing to review one of two roofing estimates provided by Plaintiff.

57.     On or about April 1, 2022, Plaintiff submitted an estimate to USAA from painting contractor, HighPoint Painting, in the amount of $44,014.83.

58.    On April 5, 2022, USAA completed a third interior inspection of the Home with Greenpoint Contractors. During the fourth inspection, Meyer told Plaintiff that *if* an industrial hygienist would be enlisted, USAA would send their own Industrial Hygienist because any industrial hygienist hired by Plaintiff might just take 2 or 3 samples, and not be thorough.

59.    On April 27, 2022, USAA completed an updated estimate on the dwelling, other structures, ordinance & law, and trees and shrubs totaling $213,961.56 RCV and $170,107.39 ACV ("Third USAA Estimate").

60.    The Third USAA Estimate continued to grossly understate the scope and cost to repair/clean the main residence to its pre-loss condition.

61.    More specifically, the Third USAA Estimate was largely limited to cleaning the surfaces of the Home and did not include any allowance for repairs required by local ordinance and law.

62.    The Third USAA Estimate did not make sufficient allowance to restore the windows and doors in Plaintiff's home to pre-loss condition.

63.    The Third USAA Estimate did not make a sufficient allowance to restore Plaintiff's insulation, plumbing, HVAC or electrical systems to pre-loss condition.

64.    The Third USAA Estimate did not make sufficient allowance to restore Plaintiff's sunroom to pre-loss condition.

65.    On May 16, 2022, Plaintiff requested that USAA extend coverage to encapsulate the attic after damaged insulation was removed.

66.    On May 16, 2022, Meyer replied "There should not be any cleaning required in the attic . . . just the insulation replacement should suffice."

67. On May 30, 2022, Plaintiff documented Marshall Fire related debris in the attic during their removal of the damaged attic insulation.

68. On or around June 2, 2022, Plaintiff submitted documentation illustrating Marshall Fire related debris observed in the attic during the removal of the damaged insulation and a corresponding estimate to remediate the observed debris.

69. On June 2, 2022, Plaintiff submitted an estimate from Professional Carpet Systems to remediate the attic.

70. On June 3, 2022, Plaintiff submitted photo documentation of insulation behind the removed gas fireplace illustrating likely fire contamination. USAA did not respond to Plaintiff's June 3, 2022 submission.

71. Because USAA had failed to investigate, inspect, or test for particulate infiltration and contamination, and failed to procure an Industrial Hygienist to perform necessary investigatory measures, Plaintiff engaged Kaizen Safety Solutions, LLC ("Kaizen") to perform an assessment of their home for soot, char, or ash particulate matter caused by the Marshall Fire.

72. On June 4, 2022, Kaizen Safety Solutions conducted a site visit of the Home and performed an industrial hygiene evaluation and sampling for damage caused by the Marshall Fire. During its inspection, Kaizen collected 108 samples including wall cavities, and attics.

73. On June 17, 2022, Plaintiff inquired with USAA about the status of reviewing the attic remediation estimate. Meyer never contacted Plaintiff or their contractor regarding the attic remediation estimate.

74. On June 22 and June 26, 2022, Plaintiff reported continued smoke odor at the Home that did not exist prior to the Marshall Fire.

75.     On June 29, 2022, Plaintiff sent photos to USAA of the visible suspected fire byproducts on the inner window casings.

76.     On July 9, 2022, Plaintiff provided USAA with test findings confirming positive home-testing results for lead at the Home. USAA did not reply to Plaintiff's submission.

77.     On July 9, 2022, Plaintiff submitted to USAA, an estimate for reimbursement for industrial hygiene testing performed by Kaizen Safety Solutions. In their request Plaintiff cited USAA's agreement to offer independent testing at the insurer's cost where there is a question of habitability after cleaning published in the Colorado Division of Insurance Consumer Advisory of March 17, 2022.

78.     On July 11, 2022, when Plantiffs informed USAA that they had hired Kaizen as their Industrial Hygienist of choice, USAA transmitted the following message to Plaintiff:

> "*In regards to a hygienist I will request from my manager for USAA to assign a hygienist for a report. Please allow USAA to handle this portion.*" "*I am reviewing all your documentation from multiple vendors and this takes some considerable time. I apologize for this.*"

79.     On or around July 11, 2023, USAA engaged Vertex Companies (Vertex) to complete industrial hygienist testing of the Home.

80.     On July 26, 2022, Alexander Johnson of Vertex conducted a visual inspection and limited bulk sampling for wildfire introduced soot, char, and ash at the Home. During its inspection, Vertex collected 11 total tape lift samples and four micro-vacuum samples. Vertex did not collect any samples from the Home's wall cavities or attic.

81.     During his inspection, Alexander Johnson notified Plaintiff that he would not collect attic samples as it "would not change his recommendations."

82.    On August 1, 2022, Plaintiff submitted to USAA an updated estimate for siding repairs. On August 4, 2022, Plaintiff's siding contractor provided USAA with information that paint will not stick to siding that has been subjected to heat like Plaintiff's property.

83.    On August 4, 2022, during an onsite walkthrough with Plaintiff's contractor, Plaintiff's contractor inquired with USAA regarding the need to power wash the fire-marked rear rock wall. Meyer responded to their vendor that no power washing would be necessary because "rain would take care of it."

84.    On or around August 4, 2022, Meyer informed Plaintiff that drywall damage in the garage would be a $15-$30 fix and would not be covered by the Policy.

85.    On August 8, 2022, Plaintiff submitted an email to USAA outlining outstanding discrepancies regarding the damaged windows at the Home.

86.    On or about August 8, 2022, Plaintiff submitted a letter from Ronald J. Sokol, MD, outlining concerns about the Redublado child's health risks and necessity of following a hygienist protocol and removing fire debris embedded inside wall cavities. USAA never responded to Plaintiff's medical doctor's recommendations.

87.    On August 11, 2022, Vertex completed it's a report of its observations during the inspection of the Home ("Vertex Report"). The Vertex Report reported a noticeable smoke odor within the residence and observed visible suspect combustion byproducts on the surfaces of the Home. The Vertex Report recommended cleaning of the interior of the residence, cleaning of the attic, and replacement of attic insulation. The Vertex Report recommended that additional investigation be performed to identify the source of smoke odors.

88.     USAA did not update its estimate to include all of the repairs recommended within the Vertex Report.

89.     On August 24, 2022, Plaintiff submitted documentation showing concerns of thermal damage to the attic and driveway of the Home.

90.     On or about August 27, 2022, USAA engaged an engineer, Sdii Global (Sdii), to inspect the "framing, roof framing, driveway, siding, and interior."

91.     On September 5, 2022, Kaizen Safety Solution completed a report detailing the observations of its inspection ("Kaizen Report") which listed the following conclusions:

    (1)   the residence was uninhabitable until remediation was completed;
    (2)   full remediation was necessary to return the Home to its pre-loss condition;
    (3)   all contents and building materials had been exposed to toxic levels of carcinogens, chemical concentrations, and suspended particulates;
    (4)   evidence of fire debris was determined on the HVAC equipment, floor vents, and ductwork;
    (5)   all insulation, including attic, basement, and interior wall insulation, were exposed to elevated particulates and gases;
    (6)   all electronics, appliances, electrical systems, and mechanical systems should be presumed to have been exposed to fire insult based on the chloride anion levels found in the residence; and
    (7)   treatments utilizing oxidizers (ozone, hydroxyl etc.) within the residence is insufficient to appropriately remediate the Home.

92.     Upon reasonable suspicion and belief, USAA did not contact Kaizen Safety Solutions to discuss its report and findings, demonstrating a failure to conduct a reasonable investigation based on all available information in violation of Colorado Revised Statutes § 10-3-1104 (1)(h)(IV), which has led to the delay and denial of payment of coverage benefits to remediate Plaintiff's Home without a reasonable basis.

93.    On September 13, 2022, Plaintiff requested reimbursement for the cost of storage for Plaintiff's contents during the period of repairs. Meyer responded "No additional storage is being approved. Once the home is habitable all contents can be returned to the home for inventory."

94.    On or about September 14, 2022, Plaintiff submitted to USAA an estimate of the scope and cost to repair interior damage identified in the Kaizen Report prepared by Regal Restoration in the amount of $176,303.35.

95.    On September 19, 2022, Meyer declared that he was not willing to meet with Regal Restoration.

96.    On September 20, 2022, Meyer sent an e-mail communication to Regal Restoration which stated:

> *"Sorry but we are not using the member's hygienist. I would be glad to forward the member's hygienist report to Vertex for opinion from Vertex. Ultimately it is Vertex's findings that we will use and if they amend their findings then we will go with any amendments they make."*

97.    On September 21, 2022, Joe Presswood of Sdii conducted an inspection of the Home. During his inspection, Presswood stated that he did not know what he was supposed to be checking; was not an industrial hygienist; and that he had no experience of any kind in Colorado, including for wildfires, and that he mostly works in Louisiana.

98.    On September 21, 2022, Meyer notified Regal Restoration that it would "be like winning the lottery" for Vertex to agree with the findings outlined in Kaizen Report.

99.    On September 27, 2022 Sdii completed a report of its findings and observations which concluded that cleaning would be required in the attic ("Sdii Report").

100.    On September 29, 2022, Plaintiff submitted to Presswood professional assessment letters of thermal damage to the garage and fireplace, the floorplan of the home, photos of the

Home in pre-repair condition and in relation to Marshall urban wildfire that burned half of the neighborhood, and a copy of the Kaizen Report. Sdii made no subsequent revisions to its September 27, 2022 report nor issued any supplementary report based on Plaintiff's September 29, 2022 submission.

101.    On September 29, 2022, Pete Lawrence of Kikin Home and Building Inspections made a visual inspection of the Home. In his report, Lawrence observed extensive smoke, fire, and water damage throughout the interior and exterior of the Home. Among its repair recommendations, the Kikin report recommended destructive testing, and further evaluation to address the extent of the fire loss and structural concerns. Plaintiff forwarded Kikin's repair recommendations to USAA. USAA did not acknowledge the report.

102.    On October, 4, 2022, Vertex released a supplemental report which stated:

*At a minimum all wall cavities would need to be inspected for further damage and to remove fire debris that has already been proven to be inside wall cavities… removal and replacement… If an item or building material cannot be successfully remediated, these items/materials should be removed and replaced…. professional mitigation is warranted… Vertex recommends retaining an experienced, reputable remediation contractor… performing a post -remediation assessment to ensure that a thorough and successful remediation of the subject property has occurred…*

103.    At this juncture, Plaintiff became concerned that if they continued to rely on Andrew Meyer and USAA to investigate the Loss, they would be unable to repair their home to pre-loss condition from the Marshall Fire and retained a public insurance adjuster to assist them in the evaluation of the cost to reconstruct their Home.

104.    On October 17, 2022, Meyer informed Plaintiff:

*"The Vertex report does not adopt the Kaizen report . . . USAA is going to reaffirm using the original Vertex report as a basis for our estimating."*

105.    While the Policy grants Plaintiff two years to recover RCV on personal property, Meyers misrepresented to Plaintiff that they would only be able to submit their personal property contents for reimbursement within one year of the Loss.

106.    On December 1, 2022, Meyer responded that Plaintiff would only have 3 weeks to submit their personal property inventory because 3 weeks "is more than plenty of time."

107.    On December 1, 2022, Plaintiff's public adjuster submitted a complaint to the Colorado Division of Insurance on Plaintiff's behalf regarding the misrepresentation of personal property coverage benefits.

108.    On December 13, 2022, USAA admitted that the correct deadline to submit personal property inventory for reimbursement was December 30, 2023.

109.    On December 27, 2022, USAA misrepresented to Plaintiff that ALE benefits were no longer due and payable: "Based on the reasonable scope of repairs the period of time to complete the repairs has concluded... the final ALE payment was the most recent ALE payment."

110.    On January 9, 2023, Plaintiff's public insurance adjuster sent an e-mail to USAA which stated:

> "USAA's vendor Vertex amended their report on CBP being found in the house. This report was released on October 4, 2022. . . The report clearly states wall cavities need to be inspected and cleaned by an experienced contractor. The insureds have hired a remediation contractor as well as a rebuild contractor. I will be submitting these estimates and necessary documentation in the coming weeks. Therefore, we will need and extension on ALE."

111.    On January 12, 2023, Meyer misrepresented that Vertex only concluded that "professional mitigation is warranted."

112.    On January 25, 2023, Meyer emailed Plaintiff notifying them that he was charging his hygienist and his engineer under Plaintiff's dwelling coverage limit because "it is very common to see engineering costs incorporated into a repairs estimate."

113.    On February 7, 2023, Meyer notified Plaintiff:

*"At this time there are no pending payments, estimates being reviewed, or changes in scope of estimation being actively considered. Additional living expense extensions are also not being actively considered."*

114.    On March 27, 2023, public insurance adjuster submitted additional claim documentation to USAA including a notarized proof of loss, incurred invoices, a demolition estimate, Plaintiff's general contractor's rebuild estimate, and subcontractors' estimates.

115.    On April 13, 2023, Plaintiff's public insurance adjuster provided USAA with photographs illustrating charred OSB sheathing, melted and combustion byproduct-soaked wall insulation.

116.    USAA never responded to the public insurance adjuster submission of April 13, 2023. USAA's refusal to respond to the scope of repairs provided by Plaintiff's public insurance adjuster was inconsistent with property insurance industry standards, including, but not limited to, Colorado Revised Statutes § 10-3-1104 (1)(h)(IV)("Refusing to pay claims without conducting a reasonable investigation based upon all available information."), leading to the delay and denial of payment of coverage benefits to reconstruct Plaintiff's Home without a reasonable basis.

117.    On April 27, 2023, Plaintiff's public adjuster emailed USAA regarding multiple concerns concerning USAA's insufficient scope of repairs, USAA's lack of detail in its scope of personal property, USAA's reliance on its industrial hygienist without consideration for two Plaintiff's industrial hygienists, USAA's renewed misrepresentation as to the timeframe Plaintiff

had to submit personal property contents for reimbursement and USAA's insistence on using Xactimate pricing instead of real-world pricing from contractors.

118.    On April 28, 2023, Plaintiff submitted documentation outlining their estimates for coverage A in the amount of $1,079,496.89 RCV and $978,083.40; additional living expenses in the amount of $125,485.42; and personal property coverage in the amount of $717,973.63 RCV, $668,732.13 ACV.

119.    On May 4, 2023, Meyer conducted a fourth inspection of the Home. During the inspection, Meyer notified Plaintiff's public insurance adjuster that USAA would not consider the industrial hygiene reports submitted by Plaintiff.

120.    On May 4 and May 9, 2023, Plaintiff's public adjuster emailed USAA regarding the smoke smell that was previously reported to USAA on January 12, 2022, March 30, 2022, April 5, 2022, June 29, 2022, and July 9, 2022, along with requests for a certified industrial hygienist and subsequent testing. Plaintiff's public adjuster raised concerns about USAA's failures to respond to these requests.

121.    On May 4, 2023, Meyer emailed Plaintiff's public adjuster that USAA would not extend ALE benefits and further misrepresented that final contents lists were due for reimbursement on June 30, 2023. Meyer stressed that USAA would only send a hygienist of his choosing for post-cleaning testing.

122.    On May 5, 2023, Meyer notified Plaintiff that Keystone Engineers & Experts (Keystone) would be handling post cleaning testing. Meyer also notified Plaintiff that Plaintiff's cleaning contractors were responsible for any soot and smoke odor remaining at the Home.

123.    On May 16, 2023, Plaintiff provided USAA their final personal property inventory.

124.    On June 6, 2023, Josehp Haugh of Forensic Analytic Consulting Group performed an inspection on behalf of Keystone. Upon reasonable information and belief, Haugh is not a certified industrial hygienist. During his inspection, Haugh collected 12 samples at the Home.

125.    On June 12, 2023, Plaintiff's public adjuster emailed USAA regarding concerns about directing its industrial hygienist in a manner designed to deliver a specific outcome. Plaintiff's public insurance adjuster also raised concerns about USAA's non-responsiveness on prior communications.

126.    The Policy does not require Plaintiff to support ownership on all claimed personal property contents submissions.

127.    On June 20, 2023, Meyer misrepresented that Plaintiff "be prepared to support ownership on all items."

128.    On June 26, 2023, Keystone completed a three- page smoke report for USAA ("Keystone Report"). The Keystone Report made no reference to the Kaizen Report or the positive test results showing soot inside of wall cavities and only referenced the 12 surface samples taken during the June 2 inspection by Forensic Analytic Consulting Service. The Keystone Report recommended basic cleaning of surfaces and washing of materials.

129.    Jaren Tolman of Keystone signed the Keystone report. Upon reasonable information and belief, Jaren Tolman is not a certified industrial hygienist.

130.    Following the Keystone report, Meyer referred to Keystone and Keystone as his second Hygienist.

131.    On June 27, 2023, Plaintiff's public adjuster emailed USAA with concerns about USAA's refusal to consider the industrial hygienist reports and sampling results submitted by

Plaintiff which illustrated combustion byproducts inside the wall cavities of the Home. Plaintiff's public insurance adjuster also raised concerns regarding USAA's improper investigation, adjustment, and failure to release warranted payment for benefits owed under the policy.

132.    While there was no agreed scope of work between Plaintiff and USAA, on June 27, 2023, Meyer notified Plaintiff that ALE benefits were denied because "cleaning and repairs could have concluded months ago."

133.    On or around June 27, 2023, Meyer notified Plaintiff that the wall cavities of the Home would not be considered for payment based on his hygienist's conclusions.

134.    On or around June 27, 2023, Meyer notified Plaintiff that any remaining soot within the entire Home must have been from "lack of workmanship" by restoration contractors. Meyer provided no basis for his conclusion.

135.    On or around June 27, 2023, Meyer notified Plaintiff that even though he had not completed his review of Plaintiff's contents inventory, the majority of the items in Plaintiff's list deemed damaged would not be considered as non-salvageable.

136.    On June 27, 2023, Plaintiff's public insurance adjuster emailed USAA outlining USAA's failure to properly investigate the claim and its reliance in its opinions, conclusions, and scope of damages based on incomplete information.

137.    On June 29, 2023, before completing his review of Plaintiff's contents estimate, Meyer sent an e-mail communication to Plaintiff which stated:

> "I do not see a path to agreement for the full contents limit which is $283,000.00. However, we will consider any supporting proof of damage followed by proof of ownership."

138.    On July 5, 2023, instead of applying USAA's commissioned industrial hygienist, Vertex, to USAA's claim expenses, Meyer paid for Vertex's invoice through Plaintiff's dwelling coverage. Plaintiff never agreed to the hiring of Vertex.

139.    On July 6, 2023, Plaintiff's public insurance adjuster provided USAA additional detailed information regarding personal property and requested explanation as to why USAA has not provided coverage for items that were destroyed directly by the Marshall Fire.

140.    On July 7, 2023, Plaintiff, Meyer, and Plaintiff's public insurance adjuster held a conference call. During the call, Meyers notified Plaintiff:

> *"we're (USAA) not going to go there and we're not budging" and "I'm not fielding anymore questions regarding gutting the house."*

141.    During the call, Meyer stated that Plaintiff's statement that their personal property still smells of smoke after being cleaned is "their opinion," and that their opinion of cleanliness of their contents does not matter and is not evidence of damage.

142.    On July 7, 2023, Meyer notified Plaintiff that USAA's position remains unchanged.

143.    While there no agreed scope of work between Plaintiff and USAA, on July 7, 2023, Meyer stated that Additional Living expenses would not be paid because "the USAA scope of work could have reasonably concluded in 12 months."

144.    On July 7, 2023, Plaintiff's public adjuster e-mailed USAA requesting advisement of what reasonable evidence Plaintiff would have to provide to satisfy USAA that the smoke odor remaining on property warranted replacement.

145.    On July 16, 2023, Meyer e-mailed Plaintiff stating that USAA was standing behind the Vertex and Keyston reports, giving Plaintiff no reason why he was blindly preferring his experts over Plaintiff's. Meyer provided no answer to what reasonable evidence Plaintiff would

have to provide to satisfy USAA that the smoke odor remaining on property warranted replacement. Meyer simply indicated that the hygienist determined that cleaning was sufficient.

146.    On July 17 and 24, 2023, Plaintiff's public adjuster emailed USAA with specific questions and concerns about USAA's revised coverage estimates.

147.    On July 29, 2023, Plaintiff's Public Adjuster requested a formal meeting USAA, Vertex, and Kaizen to discuss the difference in their findings.

148.    On August 1, 2023, Meyer returned from vacation and emailed Plaintiff demanding they print out over 400 pages of their contents estimate, mark them up with pen and send back to him. Meyers demand was an extracontractual requirement, intended to delay payment of benefits due under the Policy.

149.    On August 23, 2023, Plaintiff's public adjuster emailed USAA requesting an update as to why USAA had been in receipt of Plaintiff's personal property inventory for over three months and issued no payment nor claim decision.

150.    On or around October 2, 2023, USAA released payment in the amount of $172,387.57 under personal property coverage.

151.    On December 11, 2023, USAA completed its revised estimate ("USAA Fourth Estimate").

152.    The Fourth USAA Estimate continued to grossly understate the scope and cost to repair/clean the main residence to its pre-loss condition.

153.    More specifically, the Fourth USAA Estimate did not cover restoring Plaintiff's insulation and wall cavities to pre-loss condition.

154.    The Fourth USAA Estimate did not make sufficient allowances to restore Plaintiff's electrical, plumbing, and HVAC systems to pre-loss condition.

155.    The Fourth USAA Estimate did not cover the necessary cost of building ordinances.

156.    On December 11, 2023, USAA issued payment in the amount of $6,713.22 under dwelling coverage.

157.    On December 13, 2023, USAA issued payment in the amount of $42,046.20 under personal property coverage.

158.    USAA's failure to timely conduct a thorough evaluation of the Claim, as further alleged above, and its failure to timely prepare an estimate of the scope and cost to repair the Home and address personal property was inconsistent with property insurance industry standards, including, but not limited to, Colorado Revised Statutes § 10-3-1104 (1)(h) and Colorado Division of Insurance Regulation 702-5:5-1-14.

159.    More specifically, Colorado Division of Insurance Regulation 702-5:5-1-14(4)(A)(1)(a) provides that [a]ll insurers authorized to write property and casualty insurance policies in Colorado, shall make a decision on claims and/or pay benefits due under the policy within sixty (60) days after receipt of a valid and complete claim unless there is a reasonable dispute between the parties concerning such claim, and provided the insured has complied with the terms and conditions of the policy of insurance.

160.    Additionally, Colorado Division of Insurance Regulation 702-5:5-1-14(4)(B)(3) requires an insurer that has not completed its investigation or otherwise has not paid the claim within 60 days to, every 30 days, send the insured a letter stating the reasons additional time is needed for investigation.

161.    From the commencement of the Claim, in January of 2022 until December of 2023, USAA consistently failed to send Plaintiff the required 30-day status letters stating the reasons additional time was needed for investigation.

162.    USAA's failure to timely conduct a thorough evaluation of the Claim, as further alleged above, and its failure to timely prepare an accurate estimate of the scope and cost to rebuild the Home, led to the delay of covered benefits, as outlined in Paragraphs 22-148 without a reasonable basis.

163.    USAA's failure to promptly review its own expert's reports and investigate the Claim led to the delay in the processing and payment of covered insurance benefits to Plaintiff without a reasonable basis.

164.    USAA's continued failure to promptly pay under the Policy has resulted in a delay and denial of covered benefits to Plaintiff without a reasonable basis.

165.    Plaintiff has complied with all conditions precedent to filing of this action and/on USAA has waived such conditions.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

166.    Plaintiff realleges and reaffirms Paragraphs 1-152 as if fully set forth herein.

167.    Under Colorado law, a party attempting to recover a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to Plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

168.    Plaintiff purchased an all-risk Policy requiring USAA to pay for any and all fortuitous damages resulting from a loss not expressly excluded or otherwise limited by the Policy.

169.    The Policy between Plaintiff and USAA is a binding contract.

170.    Plaintiff paid premiums and otherwise performed all conditions precedent to recovery of benefits under their Policy with USAA.

171.    The Policy contained a provision mandating that USAA pay for accidental direct physical loss to the Home caused by fire.

172.    USAA refuses to provide the contractually required and covered benefits to Plaintiff, including Coverage A Dwelling, Coverage B personal property, and Coverage C Loss of Use benefits.

173.    USAA has delayed and/or denied certain covered damages and continues to delay and/or deny certain coverages as outlined above.

174.    USAA's failure to honor its obligations under the Policy is a breach of contract.

175.    USAA's breach of contract has damaged Plaintiff.

176.    Plaintiff is entitled to all benefits due and owing under the Policy.

### SECOND CLAIM FOR RELIEF
**(Unreasonable Delay and Denial of Payment of Covered Benefits
Pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116)**

177.    Plaintiff realleges and reaffirms paragraphs 1-163 as if fully set forth herein.

178.    Under Colorado Revised Statute § 10-3-1115, an insurer who delays or denies payment to an insured without a reasonable basis for its delay or denial is in breach of the duty of good faith and fair dealing.

179.    Under Colorado Revised Statute § 10-3-1115, an insurer's delay or denial is unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

180. Plaintiff is a first-party claimant within the meaning of Colorado Revised Statute § 10-3-1115.

181. USAA is an insurer within the meaning of Colorado Revised Statute § 10-3-1115.

182. USAA delayed and denied payment of covered benefits to Plaintiff as alleged in the preceding paragraphs of the Complaint without a reasonable basis for its actions.

183. As more fully alleged in the paragraphs above, USAA failed to conduct a timely evaluation of the Claim. USAA's failure to provide an estimate of repairs reflecting the appropriate remediation protocol led to an unreasonable delay of covered insurance benefits to Plaintiff. USAA knew, or should have known, that the Home and personal property would require adequate testing and sampling to determine the extent of contamination immediately following the Loss. USAA's failure to promptly conduct the appropriate inspection, testing, and sampling led to the delay in covered benefits without a reasonable basis.

184. As more fully alleged in the paragraphs above, USAA failed to conduct a thorough evaluation of the Claim. USAA's refusal to appropriately reconcile the disagreements between its hired expert and Kaizen led to the delay and denial of covered benefits to Plaintiff without a reasonable basis. Specifically, neither USAA, Vertex, Sdii,, nor Keystone attempted to contact Kaizen or its representatives prior to finalizing its coverage determination and closing the claim.

185. As more fully alleged in the paragraphs above, USAA's repair estimates did not provide for the reasonable scope and cost to remediate the Home given the extent of contamination and appropriate remediation protocol. USAA's failure to properly evaluate the necessary remediation led to an unreasonable delay in the processing of the Claim and payment of covered insurance benefits to Plaintiff.

186.    USAA knew, or should have known, that additional personal property coverage was due and owing following its initial inspection of the Home and Plaintiff's submission of their personal property inventory on May 16, 2023. USAA's failure to promptly resolve Plaintiff's Coverage B claim resulted in a delay of covered benefits to Plaintiff without a reasonable basis.

187.    In insurance cases, such as this one, "the Unfair Claims Practices Act regulates the conduct of the insurance industry . . . [and] sets forth standards for when the commissioner of insurance may find that an insurance company is engaged in an unfair or deceptive trade practice." *Am. Family Mut. Ins. Co. v. Allen*, 102 P.3d 333, 344 (Colo. 2004) (en banc).

188.    Specifically, Section 10-3-1104(1)(h) of the Unfair Claims Practices Act defines certain acts of unfair claims settlement practice. C.R.S. § 10-3-1104(1)(h). "While the Unfair Claims Practices Act does not establish a standard of care actionable in tort, it may be used as valid, but not conclusive, evidence of industry standards." *Allen*, 102 P.3d at 344.

189.    Section 10-3-1104(1)(h)(III) of the Unfair Claims Practices Act provides that it is in an unfair or deceptive act to fail to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies. C.R.S. § 10-3-1104(1)(h)(III). USAA's refusal to reconcile the appropriate remediation protocol, runs afoul of Section 10-3-1104(1)(h) of the Unfair Claims Practices Act.

190.    Section 10- 3-1104(1)(h)(IV) further instructs that it is an unfair or deceptive act to refuse to pay claims without conducting a reasonable investigation based on all available information. *Id.*, at C.R.S. § 10-3-1104(1)(h)(IV). Further, Section 10-3-1104(1)(h)(VI) provides that it is an unfair or deceptive act to not attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. C.R.S. § 10-3-

1104(1)(h)(VI). USAA knew no later than its initial inspection on January 19, 2022, that the Home

was severely impacted by the Marshall Fire. USAA's failure to promptly conduct the necessary

testing and refusal to reconcile the appropriate remediation protocol runs afoul of Sections 10- 3-

1104(1)(h)(IV) and 10-3-1104(1)(h)(VI) of the Unfair Claims Practices Act.

191.    Section 10-3-1104(1)(h)(II) of the Unfair Claims Practices Act provides that it is

an unfair or deceptive act to fail to acknowledge and act reasonably promptly upon

communications with respect to claims arising under insurance policies. C.R.S. § 10-3-

1104(1)(h)(II). USAA and/or its representatives failed or refused to timely act upon

communications forcing its insured to retain representation, in violation of Section 10-3-

1104(1)(h)(II) of the Unfair Claims Practices Act.

192.    Section 10-3-1104(1)(h)(VII) of the Unfair Claims Practices Act provides that it is

an unfair or deceptive act to compel an insured to institute litigation to recover amounts due under

an insurance policy by offering substantially less than the amounts ultimately recovered in actions

brought by such insured. C.R.S. § 10-3-1104(1)(h)(VII).

193.    Similarly, Colorado Division of Insurance Regulation 5-1-14 provides evidence of

industry standards, and therefore of the reasonableness of an insurer's conduct. *Goodman v. State

Farm Mutual Automobile Insurance Company*, No. 13-cv-1376-WJM-MJW, 2014 U.S. Dist.

LEXIS 146866, at *12 (D. Colo. Oct. 15, 2014).

194.    Colorado Division of Insurance Regulation 5-1-14 further states that "[w]hen an

investigation is incomplete or is otherwise continued and the insurer has not paid the claim within

the time required . . . the insurer shall immediately notify the insured . . . of the reason(s) the claim

has not been paid." 3 Colo. Code. Regs. § 702-5:5-1-14, at § 4(B)(3).

195.    Colorado Division of Insurance Regulation 5-1-14 provides that when an insurer cannot immediately complete an investigation, the insurer must send the insured a letter every 30 days setting forth any reasons the investigation cannot be completed. 3 Colo. Code. Regs. § 702-5:5-1-14, at § 4(B)(3).

196.    In addition to the standards set forth within the Unfair Claims Practices Act and Colorado Division of Insurance Regulation 5-1-14, insurance industry standards require an insurer, like USAA, to conduct a reasonable investigation based on all available information, *see Allen*, 102 P.3d at 344; *see also* 14 Couch on Insurance § 207:25 ("Implicit in the duty to investigate is the requirement that the investigation be adequate and fair."); "providing a reasonable explanation of a denial of a claim," *Allen*, 102 P.3d at 344-45 (affirming bad faith verdict because, among other things, the evidence showed that the insurer "concluded its investigation without exploring [certain] conflicting statements . . . or by talking with [a relevant witness]").

197.    As outlined throughout the preceding Paragraphs of this Complaint, USAA's conduct runs afoul of Colorado Division of Insurance Regulation 5-1-14.

198.    Based on the foregoing, USAA delayed and denied the authorization of payment of covered insurance benefits without a reasonable basis in violation of C.R.S. § 10–3–1115.

199.    Plaintiff is therefore entitled to two times the covered benefits that have been delayed and denied to them, attorneys' fees, and costs pursuant to C.R.S. § 10-3-1116, together with interest at the highest rate allowed by law.

**THIRD CLAIM FOR RELIEF**
**(Common Law Bad Faith)**

200.    Plaintiff realleges and reaffirms paragraphs 1-186 as if fully set forth herein.

201.    USAA owed duties arising from the Policy's implied covenants of good faith and

fair dealing, under which USAA covenanted that it would, in good faith and in the exercise of fair

dealing, deal with Plaintiff fairly and honestly, faithfully perform its duty of representation, and

do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights to receive the

benefits provided by the Policy.

202.    An insurer breaches its duty of good faith and fair dealing when it engages in unfair

claim settlement practices, denying and delaying due payment of available benefits under the

Policy.

203.    At all times, Plaintiff fulfilled their obligations under the Policy and acted in

accordance with the duty of good faith and fair dealing.

204.    USAA breached its covenant of good faith and fair dealing that it owes to Plaintiff

by engaging in a pattern of conduct designed to deprive Plaintiff of their rights and benefits under

the Policy.

205.    As described in more detail above, USAA and its agents either knowingly, or with

reckless disregard to its actions, underestimated the Claim in an effort to drive down the amount

of covered benefits payable to Plaintiff.

206.    As described in more detail above, USAA strung out the Claim and low-balled the

actual cost to repair Fire and Smoke related damage to the Home. USAA's initial evaluation was

grossly insufficient given the appropriate remediation measures necessary to restore the Home.

USAA failed to conduct a timely or objectively reasonable investigation.

207.    As demonstrated by the paragraphs above, USAA has failed to adopt and

implement reasonable standards for the prompt investigation of claims arising under its insurance

policies. While liability for coverage was reasonably clear, USAA did not attempt in good faith to effectuate a prompt, fair, and equitable resolution of the Claim.

208.    USAA knew or should have known that that its decision to delay payment of available policy benefits to indemnify the loss and damage would cause Plaintiff financial distress and pecuniary loss.

209.    USAA's conduct has resulted in an avoidable harm to Plaintiff.

210.    It is apparent from USAA's conduct in the handling of Plaintiff's Claim that USAA has adopted a plan or approach to delay, as much as possible, its handling and payment of the Claim.

211.    USAA has committed such actions willfully and with such frequency as to indicate a general business practice.

212.    Plaintiff has suffered, and continue to suffer actual damages, due to USAA's breach of its covenant of good faith and fair dealing.

213.    As a direct and proximate result of USAA's actions, Plaintiff has:

(a)    Incurred and will incur in the future increased costs to repair, restore and/or replace the significant Home damage;

(b)    Suffered and will continue to suffer damages as a foreseeable and proximate result of the misconduct alleged; and

(c)    Suffered and will continue to suffer other expenses, including attorneys' fees, Public insurance adjuster fees, investigatory fees, and other losses.

### DEMAND FOR JURY TRIAL

214.    Plaintiff demands trial by jury with respect to all claims and issues triable to a jury.

### REQUEST FOR RELIEF

215.   Plaintiff respectfully requests that this Court enter judgment in their favor and against USAA as follows:

   (a)   Damages caused by USAA's breach of contract, including all benefits owed under the insurance contract;
   (b)   For statutory damages and penalties pursuant to C.R.S. §§ 10-3-1115, 1116;
   (c)   For all costs, expenses, and attorney fees incurred by Plaintiff as allowed by any statute, court rule, or contract;
   (d)   For damages caused by the bad faith breach of insurance contract by USAA;
   (e)   For pre-judgment and post-judgment interest as permitted by statute or court rule; and
   (f)   For such other relief as the Court may deem just and proper.

Dated: December 29, 2023                    Respectfully submitted,

                                            *s/Jonathan E. Bukowski*
                                            Jonathan E. Bukowski Esq.
                                            Matthew E. Stalcup Esq.
                                            Merlin Law Group, PA
                                            1001 17th Street, Ste. 1150
                                            Denver, CO 80202
                                            Telephone: 720-665-9680
                                            Facsimile: 720-665-9681
                                            E-Mail: mstalcup@merlinlawgroup.com

DATE FILED: December 29, 2023 9:33 AM
FILING ID: E7723584B7F59

| | |
|---|---|
| DISTRICT COURT OF THE 20TH JUDICIAL DISTRICT, CASE NUMBER: 2023CV31146 <br> BOULDER COUNTY, STATE OF COLORADO <br> Address of Court:    1777 6th St., <br>                     Boulder, CO 80302 <br> Phone Number:     (303) 441-3750 | |
| **GERARD R. REDUBLADO AND KIMBERLY A. JONES REDUBLADO, TRUSTEES, THE REDUBLADO FAMILY TRUST DATED: 11/23/05,** <br><br> **PLAINTIFFS,** <br><br> **v.** <br><br> **USAA CASUALTY INSURANCE COMPANY,** <br><br> **DEFENDANT.** | **▲ FOR COURT USE ONLY ▲** |
| ATTORNEYS FOR PLAINTIFF: <br> Nicholas Conklin, #57543 <br> Jonathan E. Bukowski, #45614 <br> Matthew E. Stalcup, #59417 <br> Merlin Law Group, PA <br> 1001 17th Street, Ste. 1150 <br> Denver, CO 80202 <br> Telephone: 720-665-9680 <br> E-Mail: nconklin@merlinlawgroup.com <br> E-Mail: jbukowski@merlinlawgroup.com <br> E-Mail: mstalcup@merlinlawgroup.com | Case Number: <br> Div.:        Ctrm: |
| **DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT AND JURY DEMAND** | |

1. This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third-party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases or in Water (CW) proceedings subject to section 37-92-302 to 37-92-305, C.R.S. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2. Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

☐ This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

☒ This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest, and costs, as supported by the following certification:

> By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

**Or**

☐ Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3. ☒ This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

**Date:**  December 29, 2023 _____     *s/ Kimberly Redublado* _____
**Kimberly Redublado**
**Individually and on Behalf of the**
**Redublado Family Trust**

**Date:**  December 29, 2023 _____     *s/ Gerard Redublado* _____
**Gerard Redublado**
**Individually and on Behalf of the**
**Redublado Family Trust**

**Date:**  December 29, 2023 _____     *s/ Jonathan E. Bukowski* _____
**Jonathan E. Bukowski**

**NOTICE**
This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third-party complaint.

DATE FILED: December 29, 2023 9:33 AM
FILING ID: E7723584B7F59
CASE NUMBER: 2023CV31146

| | |
|---|---|
| DISTRICT COURT OF THE 20TH JUDICIAL DISTRICT, BOULDER COUNTY, STATE OF COLORADO<br>Address of Court:    1777 6th St.,<br>                             Boulder, CO 80302<br>Phone Number:    (303) 441-3750 | |
| **GERARD R. REDUBLADO AND KIMBERLY A. JONES REDUBLADO, TRUSTEES, THE REDUBLADO FAMILY TRUST DATED: 11/23/05,**<br><br>**PLAINTIFFS,**<br><br>v.<br><br>**USAA CASUALTY INSURANCE COMPANY,**<br><br>**DEFENDANT.** | ▲**FOR COURT USE ONLY**▲ |
| ATTORNEYS FOR PLAINTIFF:<br>Nicholas Conklin, #57543<br>Jonathan E. Bukowski, #45614<br>Matthew E. Stalcup, #59417<br>Merlin Law Group, PA<br>1001 17th Street, Ste. 1150<br>Denver, CO 80202<br>Telephone: 720-665-9680<br>E-Mail: nconklin@merlinlawgroup.com<br>E-Mail: jbukowski@merlinlawgroup.com<br>E-Mail: mstalcup@merlinlawgroup.com | Case Number:<br>Div.:          Ctrm: |
| **DISTRICT COURT CIVIL SUMMONS** | |

**TO THE ABOVE-NAMED DEFENDANT: USAA CASUALTY INSURANCE COMPANY**

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

Dated: <u>December 28, 2023</u>                    Respectfully submitted,

                                                  <u>*s/ Jonathan E. Bukowski*</u>
                                                  Jonathan E. Bukowski, #45614
                                                  MERLIN LAW GROUP, P.A.
                                                  1001 17th Street, Suite 1150
                                                  Denver, CO 80202
                                                  Phone: 720-665-9680
                                                  Fax: 720-665-9681
                                                  E-Mail: jbukowski@merlinlawgroup.com

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

**WARNING:** A valid summons may be issued by a lawyer and it need not contain a court case number, the signature of a court officer, or a court seal. The plaintiff has 14 days from the date this summons was served on you to file the case with the court. You are responsible for contacting the court to find out whether the case has been filed and obtain the case number. If the plaintiff files the case within this time, then you must respond as explained in this summons. If the plaintiff files more than 14 days after the date the summons was served on you, the case may be dismissed upon motion and you may be entitled to seek attorney's fees from the plaintiff.

TO THE CLERK: If the summons is issued by the clerk of the court, the signature block for the clerk or deputy should be provided by stamp, or typewriter, in the space to the left of the attorney's name.

| District Court, County of Boulder, State of Colorado<br>1777 Sixth Street, Boulder, Colorado 80302<br>(303) 441-3750 | DATE FILED: January 4, 2024 12:42 PM<br>CASE NUMBER: 2023CV31146 |
|---|---|
| KIMBERLY REDUBLADO et al<br><br>v.<br><br>USAA CASUALTY INSURANCE COMPANY | ▲ COURT USE ONLY ▲ |
| | Case Numbers: 23CV31146<br><br>Division: Senior Judge |
| **ORDER OF RECUSAL** ||

The Judicial Officers of the 20th Judicial District are hereby recused.

SO ORDERED this 4TH day of JANUARY, 2024.

BY THE COURT:

Ingrid S. Bakke
Chief District Court Judge